**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW AARON PHILLIPS,** | : | **Civil No. 1:16-CV-1033** |
| | : | |
| **Plaintiff,** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

Social Security Administrative Law Judges are required to make a series of legal, medical and factual judgments in the course of adjudicating disability claims. They perform this task against the backdrop of a five-step sequential analytical paradigm.  Once they complete this task, courts are called upon in some instances to evaluate the outcome of these agency proceedings, reviewing the ALJ's decisions using what is generally considered to be a deferential standard of review.

In the instant case we are called upon to review a decision by a Social Security Administrative Law Judge (ALJ) that found that the plaintiff, Andrew Aaron Phillips, could perform a limited scope of light work, and concluded that he was not disabled.  Phillips now challenges this determination arguing that the ALJ

1

erred at multiple stages of this sequential analysis. However, given the deferential standard of review that applies to Social Security Appeals, which calls upon us to simply determine whether substantial evidence supports the ALJ's findings, we conclude that substantial evidence exists in this case which justified the ALJ's decisions that led to the denial of this particular claim. Therefore, for the reasons set forth below, we recommend that the district court affirm the decision of the Commissioner in this case.

## II.   Statement of Facts and of the Case

On April 30, 2013, Andrew Aaron Phillips protectively-filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434, alleging disability since March 1, 2012, due to back conditions, heart conditions, a wrist injury, declining vision, high cholesterol and depression.[1]   (Tr. 102-109, 157.)   At the time of the alleged onset of his disability, Phillips was in his late 40's, (Tr. 41.), had a ninth grade education, and had quit school to go to work. (Tr. 44.)  Phillips' employment history included working briefly as a truck mechanic during 2012, as a yard supervisor in a

---

[1] While Phillips' initial disability application asserted that he suffered from an emotional impairment, depression, we do not construe Phillips' appeal as raising any issues pertaining emotional impairments. Therefore, we are only addressing the ALJ's treatment of Phillips' alleged physical impairments in this Report and Recommendation.

recycling company in 2010, and as a truck and heavy equipment mechanic, (Tr. 45, 48-49.), lines of work which entailed heavy to medium physical exertional demands.  (Tr. 62-63.)

While Phillips alleged in his disability application that he had become wholly disabled in March of 2012, Phillips' self-reported activities of daily living after that date were in a number of respects inconsistent with a claim of full and total disability.   Thus, Phillips reported involvement in various sporting and recreational activities, stating that he had tried to hunt deer twice in the year prior to his disability hearing, but had difficulty walking in the woods.   (Tr. 54.) According to Phillips he also enjoyed fishing from a pond on his property, and did light mechanical work on two farm tractors that he had restored.   (Tr. 55-56.) Phillips also acknowledged an ability to do light household chores, including vacuuming and mopping the kitchen, as well as mowing his yard, cooking meals occasionally and grocery shopping for small items.  (Tr. 52-53.)   In addition, Phillips cared for his children and pets, and was able to spend time watching television, walking in his yard, working on projects in his garage and socializing occasionally with friends.  (Tr. 54.)

Further, while Phillips asserted disability due to the combined effects of cardiac, back, and wrist conditions, the medical evidence supporting those claims

was in some respects equivocal, sparse, or temporally remote. For example, with respect to his heart condition, Phillips' medical record reflected a history of myocardial infarction, status post multiple catheterizations and stent placements from 2007 through 2013. (Tr. 252, 256.) However, during the relevant period following the alleged onset of his disability in March of 2012, when he was examined on April 23, 2012, Phillips denied chest pain, shortness of breath, lightheadedness or syncope. (Exhibit 3F/4-5, Tr. 405-406.) His physical examination was normal and he was continued on Plavix and medications for elevated cholesterol and blood pressure. (Tr. 407.)

One year after the alleged onset of his disability, Phillips was seen on March 18, 2013, in the emergency room of Pocono Medical Center complaining of chest pain, and was found to be suffering an acute inferior wall myocardial infarction (Tr. 412). Phillips underwent a catheterization and stenting and was discharged three days later. (Tr. 366-368.) While Phillips experienced this single cardiac episode, by August 14, 2013, Phillips reported no chest pain, shortness of breath or edema. (Tr. 416-417.) His echocardiogram showed an ejection fraction of 55% and his stress testing was normal. (Exhibits 2F, Tr. 262, 3F, Tr. 423.) Further, Phillips exercised on a graded treadmill for nine minutes to a peak workload of 8.7

METS, without adverse effects and his exercise tolerance was deemed good. (Tr. 262.)

Likewise, the evidence relating to Phillips' wrist injury, his second allegedly disabling condition, did not describe that condition as wholly disabling. On December 31, 2012, Phillips injured his right wrist while moving a heavy barrel with a hand truck, hyperextending his wrist. (Tr. 207.) X-rays of the wrist were generally unremarkable, showed no obvious fracture or dislocation, and the MRI of the left wrist simply revealed evidence of degenerative tearing at the triangular fibrocartilage complex (TFCC), a cartilage structure located on the small finger side of the wrist. (Tr. 208, 238.) When he was seen for follow-up treatment on January 23, 2013, Phillips was taking Percocet for pain, and complained of stiffness in his hand, (Tr. 207.), but when he was seen for a second follow-up appointment on April 3, 2013, Phillips stated that he had been doing some light farming work to try to increase the strength in his wrist. (Tr. 211.) Phillips had discontinued taking Percocet, (Tr. 211.), and examination of the right wrist showed nearly 5 out of 5 grip strength, along with near normal flexion and extension of all the digits. (Tr. 212.)

Finally, medical records related to Phillips' third allegedly disabling impairment, his spinal condition, were limited and in some instances dated.

Phillips had undergone a lumbar laminectomy on July 18, 2002, but had been back to work doing heavy work as a truck mechanic following that 2002 medical procedure. (Tr. 440.) Nine years later, a May 2011 CT scan of Phillips' spine showed only mild degenerative changes of the lumbar spine. (Tr. 361.) More than three years then elapsed before November of 2014, when Phillips complained of a recurrence of back pain, (Tr. 441.), and a December 6, 2014, lumbar MRI showed degenerative changes and postoperative changes in his spine, including mild to moderate narrowing of the central canal as well as narrowing of the left neural foramen, one of the neural passageways through the spine. (Tr. 438-439.) Notably, though, the medical record did not appear to contain any medical opinion evidence indicating that these spinal conditions were disabling for Phillips.

In fact, with respect to each of these medical conditions which formed the basis for Phillips' disability claim, the record before the ALJ was noteworthy for its lack of compelling medical opinion evidence. For example, by April 2013, the sole medically imposed limitations suggested by the physician who treated Phillips' wrist injury was that he was allowed to do left handed work only. (Tr. 212.) As for Phillips' cardiac condition, in September of 2013 Phillips' cardiac care physician, Dr. Ponnathpur, completed a check block disability assessment form, which described some limitations Phillips may face in a summary fashion,

but failed to address other basic postural limitations. (Tr. 433-6.) This medical opinion, however, was contradicted by another medical source. Specifically, on November 5, 2013, Dr. Sharon Wander, a state agency physician, found that Phillips' ischemic heart disease was a medically determinable impairment. (Tr. 72-73.) However, after she considered Phillip's' March 2013 hospitalization, his August 2013 stress test, his history of the lumbar spinal surgery and the April 2013 examination findings concerning right wrist strain, Dr. Wander completed a physical Residual Functional Capacity ("RFC") assessment which found that Phillips could lift 20 pounds occasionally, 10 pounds frequently, and stand/walk for six hours in an eight-hour day and sit for six hours in an eight-hour day. (Tr. 74.) Dr. Wander also stated that Phillips could make postural changes occasionally, and should avoid concentrated exposure to extreme heat, cold and vibration, noise, fumes, dusts, odors and hazards. (Tr. 75.)

It was against this equivocal medical and factual backdrop that the ALJ conducted a hearing considering Phillips' disability application on January 29, 2015. (Tr. 33-67.) At this hearing Phillips and a vocational expert appeared and testified. (Id.) In the course of his testimony Phillips described his activities of daily living and indicated that he could do "light stuff," (Tr. 53.), an exertional

level acknowledged by the plaintiff which was consistent the ultimate findings made by the ALJ.

Following this hearing, on February 18, 2015, the ALJ issued a decision denying Phillips' application for disability benefits. (Tr. 17-29.) In this decision, the ALJ first found that Phillips met the insured requirements of the Act, (Tr. 22.), and then at Step 2 of the five step sequential analysis process that applies to Social Security disability claims concluded that Phillips experienced the following severe impairments: degenerative disc disease of the spine, coronary artery disease, and a right wrist injury. (Tr. 22-3.) At Steps 3 and 4 of this sequential analysis, the ALJ concluded that none of Phillips' impairments met a listing which would define him as *per se* disabled, (Tr. 23-4.), but also found that he could not return to his past employment due to these impairments. (Tr. 27.)

The ALJ then concluded that Phillips retained the residual functional capacity to perform a range of light work. (Tr. 24-6.) In reaching this conclusion, the ALJ discounted Phillips' subjective complaints of disabling pain, finding those complaints to be not fully credible. (Id.) The ALJ also gave little weight to the opinions of Howell's treating physician, Dr. Ponnathpur, finding that treatment records, state agency medical opinions, and Phillips' self-reported level of his activities all undermined this treating source opinion. Having reached these

conclusions, the ALJ found that there were significant jobs in the national economy which Phillips could perform.

This appeal followed. (Doc. 1.) On appeal, Phillips brings an array of claims, attacking the ALJ's weighing of this medical opinion evidence; the ALJ's credibility determinations; the ALJ's decision that none of Phillips' conditions were *per se* disabling; and the ALJ's treatment of Phillips' testimony that he used a cane to aid him in walking. The parties have fully briefed these issues and this case is ripe for resolution. For the reasons set forth below, we find, under the deferential standard of review which applies to Social Security appeals, that substantial evidence supports the findings of the ALJ. Therefore, we recommend that the district court affirm those findings.

III. __Discussion__

    A. __Substantial Evidence Review – the Role of the Administrative Law Judge and the Court__

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the Administrative Law Judge (ALJ) and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the

limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.  42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding.  In undertaking this task, this court applies a specific, well-settled and carefully articulated

standard of review.  In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).  Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa.

March 7, 2000).  Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole.  <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

### B. <u>The ALJ Did Not Err in the Treatment of Phillips' Claim at Step 3 of This Sequential Analysis</u>

At the outset, in this appeal, Phillips argues that the ALJ committed multiple errors at Step 3 of this sequential disability analysis process.  At Step 3 the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are *per se* disabling and entitle the claimant to benefits.  As part of this step three disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, that are acknowledged as so severe as to preclude substantial gainful activity.  20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; <u>Burnett</u>, 220 F.3d 112, 119.  In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations, and case law.  First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se,* and is awarded benefits.  20 C.F.R. §416.920(d); <u>Burnett</u>, 220 F.3d at 119.  However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, plaintiff bears the burden of

15

presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

The determination of whether a claimant meets or equals a listing is a medical one. To be found disabled under step three a claimant must present medical evidence or a medical opinion that his or her impairment meets or equals a listing. An administrative law judge is not required to accept a physician's opinion when that opinion is not supported by the objective medical evidence in the record. Maddox v. Heckler, 619 F. Supp. 930, 935-936 (D.C.Okl. 1984); Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, §3:22 (2014), *available at* Westlaw SSFEDCT. However, it is the responsibility of the ALJ to identify the relevant listed impairments, because it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Burnett, 220 F.3d at 120 n.2.

In this case Phillips alleges that the ALJ committed a series of errors at Step 3 of the sequential analysis of this particular disability claim. First, according to Phillips the ALJ committed a legal error when the ALJ concluded that Phillips did not meet the requirements of the muskoskeletal *per se* disabling listing, Listing

16

1.04A, because the ALJ found that Phillips had not shown an inability to ambulate effectively. On this score, Phillips advances a narrow and specific claim, arguing that this listing, Listing 1.04A, does not require a showing of an inability to ambulate effectively. Citing this alleged legal error by the ALJ, Phillips insists that this case must be remanded for further proceedings. In our view, this particular claim admits of a simple answer. While it seems that nationwide, "[c]ourts disagree on whether the inability to ambulate effectively is a criterion of Listing 1.04A," Richardson v. Colvin, No. 2:14-CV-13354, 2015 WL 4772399, at *24 (S.D.W. Va. May 18, 2015), report and recommendation adopted, No. CIV.A. 2:14-13354, 2015 WL 4772412 (S.D.W. Va. Aug. 12, 2015), the answer to this question is clear in this circuit, where the court of appeals has held that: "listing [1.04A] requires an inability to ambulate effectively or an inability to perform fine and gross movements effectively." Leibig v. Barnhart, 243 F. App'x 699, 702 (3d Cir. 2007). Given this settled case law in this, which requires a showing of an inability to ambulate effectively to satisfy the requirements of this listing, Phillips' argument fails.

In addition, Phillips contends that the ALJ erred in failing to adequately consider whether his aliments, in combination met or exceeded a listed impairment. On this score, Phillips insists that the ALJ's analysis was facially

inadequate and amounted to no more than a cursory treatment of this issue.   We

disagree.   While we acknowledge that the ALJ's treatment of this issue must go

beyond a summary conclusion since a bare conclusion "is beyond meaningful

judicial review," <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d

Cir. 2000), case law "does not require the ALJ to use particular language or adhere

to a particular format in conducting his analysis.   Rather, the function . . .  is to

ensure that there is sufficient development of the record and explanation of

findings to permit meaningful review."   <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d

Cir. 2004).   This goal is met when the ALJ's decision, "read as a whole," <u>id.</u>,

permits a meaningful review of the SLJ's Step 3 analysis.

Here, we believe that this decision, read as a whole, allows for meaningful

analysis of Phillips' disability claim judged against the demanding standards

prescribed at Step 3 of this sequential analysis.   In this case, the ALJ engaged in a

five-paragraph analysis of Phillips' various ailments at Step 3.   (Tr. 23-4.)   The

ALJ's decision considered this disability claim against three different listings,

analyzed the medical evidence supporting and undermining each claim at Step 3;

observed that there was a paucity of medical proof or opinion supporting the

assertion that any of these conditions were *per se* disabling; and properly

discounted these claims at Step 3 of this analysis.   The law does not require more

in this setting, and Phillips' argument that this analysis was legally insufficient is unavailing.

Finally, Phillips contends that the ALJ erred at Step 3 when the ALJ considered the opinion of a state agency expert regarding whether Phillips' cardiac condition was *per se* disabling, and failed to seek a separate medical consultant to address this issue.

This argument merits only brief consideration. An ALJ's evaluation of medical opinion evidence is conducted pursuant to clearly defined legal benchmarks. The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions. 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the

source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c). Consideration and reliance upon state agency expert opinions is often an important part of this analysis. At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence. As such, ALJs must consider these opinions as expert

opinion evidence by nonexamining physicians and must address these opinions in their decisions. SSR 96-5p, 1996 WL 374183 at *6. Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining State agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Judicial review of this aspect of ALJ decision-making, in turn, is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Yet, it is also well-settled that, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Further, when a claimant alleges that an ALJ erred at Step 3 of this analysis by considering a state agency doctor's opinions the courts are enjoined to proceed cautiously, taking into account the fact that:

> [B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that *in the opinion of the [ALJ]* ... may change the State agency medical ... consultant's finding . . . ," is an update to the report required.

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011)(emphasis in original).

In this case the ALJ was entitled to rely upon the opinion of a state agency expert to reach conclusions regarding whether Phillips' cardiac condition was *per se* disabling. Likewise in making a final determination regarding the residual functional capacity of Mr. Phillips, the ALJ was justified in giving significant weight to the opinion of the state agency expert. Furthermore, Phillips' claim that he was *per se* disabled due to his medical impairments drew scant support from the medical records before the ALJ. Recognizing that Phillips bore the burden of proof and persuasion at this stage of the sequential disability analysis, we conclude that the ALJ did not err in rejecting Phillips' disability claims at Step 3 and did not abuse its discretion by declining to seek an independent medical review of the evidence marshalled by Phillips in support of this claim.

## C. <u>The ALJ Properly Assessed the Opinion of Dr. Ponnathpur</u>

On appeal, Phillips also complains that the ALJ erred by affording only limited weight to the medical opinion of his cardiologist, Dr. Ponnathpur, who completed a check block disability assessment form, which described some limitations Phillips may face in a summary fashion, but failed to address other postural limitations. (Tr. 434-6.) In discounting this form, and giving it only limited weight, the ALJ detailed Phillips' cardiac treatment history, (Tr. 26.), described Phillips activities of daily living which indicated an ability to perform low-stress light exertional labor, (Tr. 27.), and found that the doctor's opinion was not supported by the longitudinal treatment record in this case. The ALJ also properly considered the state agency expert opinion which indicated that Phillips retained the residual capacity to perform light work.

Judged against the deferential standard of review which applies in Social Security appeals, we agree that substantial evidence supports this decision to give only limited weight to Dr. Ponnathpur's opinion. Oftentimes, as in this case, an ALJ must evaluate a number of medical opinions tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians

or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions deserve greater weight.

In making this assessment of medical opinion evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F.Supp.2d 21, 29 (D.D.C.2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

Moreover, in determining the weight to be given to a treating source opinion, it is also well-settled that an ALJ may discount such an opinion when it

conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

Here, the ALJ's decision to afford limited weight to Dr. Ponnathpur's medical opinion was fully supported by substantial evidence in the administrative record, and the grounds for that decision were fully, and cogently, explained by the ALJ in this decision. Indeed, the ALJ's judgment on this score, weighing this medical opinion evidence, was legally supported in several independent ways.

At the outset, we note that Dr. Ponnathpur's treating source opinions were made in a singularly unpersuasive fashion through cursory notations on two check box forms. On this score, it is well settled that: "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at

best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Moreover, that check block form was not fully completed by the doctor, who did not address certain postural restrictions that might affect Phillips' ability to work. Further, it is clearly established that an ALJ may discount a treating source opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016). These settled principles also apply here, and support the ALJ's decision to give this medical opinion little weight since that opinion was not consistent with Phillips' treatment history, test results, or activities of daily living. There simply was no prejudicial error by the ALJ in the consideration and evaluation of this evidence which would warrant a remand of this case.

## D. **The ALJ's Treatment of Phillips' Alleged Use of a Cane Was Appropriate**

In addition, Phillips argues that the ALJ erred in its consideration of his testimony that he used a cane to assist him in walking after he had recently suffered a fall. (Doc. 58.) According to Phillips the ALJ's failure to give the fact greater weight in its decision also compels a remand of this case for further consideration. The difficulty with this assertion is that there appears to have been no evidence presented by Phillips which established the medical necessity of a cane for ambulation. This is a material shortcoming of proof on the plaintiff's part since " 'To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed [.]' Social Security Ruling 96–9p." Howze v. Barnhart, 53 F. App'x 218, 222 (3d Cir. 2002). In short

> Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor. See, Howze v. Barnhart, 53 F.App'x 218, 222 (3d Cir.2002).

Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014).

Since Phillips did not present the degree of medical documentation required by Social Security regulations pertaining to his use of a cane to the ALJ, he cannot now be heard to complain that the ALJ failed to fully credit this largely undocumented element of his disability claim.

### E. <u>Substantial Evidence Supported the ALJ's Credibility Determination</u>

Finally, notwithstanding Phillips' claims to the contrary, we conclude that the ALJ gave adequate consideration to his subjective complaints of disabling pain and impairment. Social Security Rulings and Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529; SSR 96–7p. First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b); SSR 96–7p. During this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c); SSR 96–7p.

28

This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. § § 404.1529(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id. See George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

Here, the ALJ's decision denying benefits to Phillips faithfully followed this method of analysis prescribed by agency rules and regulations. In conducting this

review, the ALJ noted that Phillips' subjective complaints of disabling impairment were not entirely congruent with objective medical records. These medical records, in turn, were consistent with Phillips' reported activities of daily living, which seemed to confirm an ability to perform a range of low-stress light work. Given that objective medical data and Phillips' own reported activities of daily living both suggested that the plaintiff retained the ability to perform some light work, we find that the ALJ correctly concluded that Phillips' subjective complaints were not fully supported in the administrative record, and partially discounted those complaints.

## IV. Recommendation

Accordingly, for the forgoing reasons, IT IS RECOMMENDED that the district court AFFIRM the Commissioner's decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall

make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and

Recommendation may constitute a waiver of any appellate rights.

Submitted this 16th day of August 2017.


_s/Martin C. Carlson_____
Martin C. Carlson
United States Magistrate Judge